IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | ) | **CASE NO. 8:12CV241** |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM AND ORDER** |
| **DARIS W. PETERSON,** | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 9)[1] filed by Defendant Daris W. Peterson ("Peterson"). The parties have submitted briefs (Filing Nos. 10 and 13) and Peterson has submitted an Index of Evidence (Filing No. 11). For the reasons discussed below, the Motion will be denied.

## FACTUAL BACKGROUND

Based on the pleadings, briefs, and very limited evidence in the record, the following facts either are undisputed or are stated in the light most favorable to the Plaintiff Joe Hand Promotions, Inc. ("Joe Hand").

Joe Hand, a Pennsylvania corporation with its principal place of business in Feasterville, Pennsylvania, acts as a commercial distributor and licensor of sporting events. As such, it was granted exclusive nationwide commercial distribution rights to a boxing program entitled *Ultimate Fighting Championship 100: "Making History"* ("UFC 100"), to be closed-circuit telecast nationwide on July 11, 2009. Joe Hand's exclusive broadcast rights for UFC 100 included all bouts and commentary encompassed by the

---

[1] Peterson moves both for dismissal and summary judgment. The motions present a single argument, and rely on Peterson's affidavit in support. The Plaintiff voiced no objection to Peterson's use of evidence, although the Plaintiff objects to the conclusions of law Peterson suggests be drawn from such evidence. The Court will address Peterson's motions as a single motion for summary judgment. See *Brooks v. Midwest Heart Group,* 655 F.3d 796, 798 (8th Cir. 2011); Fed. R. Civ. P. 12(d).

event. Pursuant to its exclusive rights, Joe Hand sublicensed UFC 100 to various commercial entities in North America, including Nebraska, granting sublicensees in the hospitality industry, *e.g.*, bars, limited rights to exhibit the event to the public. In doing so, Joe Hand incurred considerable expense related to the promotion, marketing, administration, and transmission of the event.

Peterson is a resident of Omaha, Nebraska, and was the agent and sole shareholder of Double Dare, Inc. ("Double Dare"), a Nebraska corporation. On July 11, 2009, when UFC 100 was telecast, Double Dare leased and operated a bar called "No Dogs Allowed" in Omaha, where Peterson worked for pay. Double Dare also had a Nebraska liquor license on which Peterson was identified as "President" of the corporation. Peterson intercepted the UFC broadcast, or willfully allowed it to be intercepted, and publicly displayed it to the patrons of No Dogs Allowed, on July 11, 2009, despite not having a license to do so. On April 16, 2010, Double Dare was rendered inactive for non-payment of taxes.

Joe Hand filed this action on July 9, 2012, alleging an unauthorized publication or use of communications in violation of 47 U.S.C. § 605 (Count I), an unauthorized reception of cable service in violation of 47 U.S.C. § 553 (Count II), and conversion (Count III).

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." *Semple v. Fed. Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that its claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009), *cert. denied,* 130 S. Ct. 1074 (2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586), and "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Bloom*, 440 F.3d at 1028-29 (quoting *Anderson*, 477 U.S. at 247-48).

In other words, in deciding "a motion for summary judgment, [the] 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587.

## DISCUSSION

Peterson does not deny that he intercepted and displayed UFC 100 at No Dogs Allowed.[2] He argues, however, that the now-defunct corporation Double Dare is the responsible party, and that Joe Hand has not pled facts sufficient to pierce the corporate veil and hold Peterson individually liable for violating 47 U.S.C. §§ 605 and 553. In response, Joe Hand argues that violations of §§ 605 and 553 are analogous to copyright infringements, and an individual acting through a corporation may be personally liable for violations committed pursuant to his control and for his benefit.

Section 605(a) reads in part: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." Similarly, § 553(a)(1) reads in part: "No person shall intercept or receive or assist in intercepting or receiving any communications service

---

[2] Peterson invokes Fed. R. Civ. P. 17 in support of his Motion, asserting that he is not a "real party in interest." (Filing No. 10, pp. 4-5). As Joe Hand correctly points out, Rule 17 establishes criteria for a *claimant* to bring a claim. *See Consul Gen. of Republic of Indonesia v. Bill's Rentals, Inc.,* 330 F.3d 1041, 1045 (8th Cir. 2003) ("The real party in interest is a party who, under governing substantive law, possesses the rights to be enforced.") Rule 17 is inapplicable.

4

offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law ."

Courts have held that individuals who have the supervisory power and ability to commit violations of these statutes, and who derive financial benefits from the violations, can be held personally liable although the violations may have been committed through a corporation. See *e.g. Comcast of Ill. X v. Multi–Vision Elecs., Inc.,* 491 F.3d 938, 947 (8th Cir. 2007) (finding individual liability where there was "no distinction" between the actions of the individual and the company); *J & J Sports Prods., Inc. v. Ribeirao,* 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008) (internal quotation marks and citation omitted) ("To hold Ribeiro vicariously liable in her individual capacity under § 605, J & J Sports must show that Ribeiro had a right and ability to supervise the violations, and that she had a strong financial interest in such activities."); *Don King Prods. v. Panaderia y Reposteria La Milagrosa,* 553 F. Supp. 2d 97, 100 (D.P.R. 2008) ("[A]n individual in his personal capacity may be found liable under 47 U.S.C. § 553 . . . [but] there must be some factual allegation that an individual acting in his personal capacity violated the statute.")

Peterson was the sole owner and shareholder of Double Dare, as well as the individual identified on Double Dare's liquor license for No Dogs Allowed. At this stage of the proceedings, it appears that Peterson had the power to commit or prevent the alleged violations, and was in a position to benefit from the violations. As in *Comcast,* there appears to be "no distinction" between the actions of Double Dare and Peterson with respect to the alleged piracy.

Genuine issues of material fact remain for discovery and trial, including the specific role Peterson played in the alleged interception of the UFC 100 broadcast.  Accordingly, Peterson's Motion for Summary Judgment will be denied.

IT IS ORDERED:

1. Defendant Daris W. Peterson's (Filing No. 9) Motion for Summary Judgment is denied; and

2. Peterson will respond to the Plaintiff's Complaint on or before December 13, 2012.

DATED this 26th day of November, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge