IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>DARIS W. PETERSON, individually,<br><br>        Defendant. | CASE NO. 8:12CV241<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 28), filed by Plaintiff Joe Hand Promotions, Inc. ("Joe Hand"). For the reasons discussed below, the Motion will be denied.

### FACTUAL BACKGROUND

The following facts are those stated in the briefs and supported by pinpoint citations to evidence in the record, those the parties have admitted, and those the parties have not properly resisted as required NECivR 56.1 and Federal Rule of Civil Procedure 56.

Joe Hand is a closed-circuit distributor of sports and entertainment programming. Defendant Daris W. Peterson ("Peterson") is a resident of Omaha, Nebraska. A sports program entitled *Ultimate Fighting Championship 100: "Making History"*, was telecast nationwide on July 11, 2009 (the "Program"). Joe Hand had the exclusive commercial distribution rights to the Program. (Filing No. 28-2 at ECF 3-4.)

At all times relevant, Peterson was the sole director, President, Secretary, Treasurer, and Registered Agent of Double Dare, Inc. (Filing No. 11-1.) Peterson also was listed as the President and Manager of Double Dare, Inc., on its liquor license for

an establishment known as No Dogs Allowed (the "Establishment"), located at 5338 North 103rd Street, Omaha, Nebraska 68134. The license identified Double Dare, Inc.'s principal office as the same location. Peterson was the manager of the Establishment, and was on its premises on July 11, 2009.

The Program was exhibited at the Establishment on July 11, 2009. (Filing No. 28-2 at ECF 29.) Joe Hand did not authorize Peterson or the Establishment to broadcast the Program. (Filing No. 28-2 at ECF 4-5.) The Establishment did not purchase a commercial license from Joe Hand that would have permitted the lawful exhibition of the Program at the Establishment. (Filing No. 28-2 at ECF 3-4.) Because Joe Hand purchased and retained the exclusive commercial distribution rights, no other company was authorized to transmit the Program. (*Id.* at ECF 4.)

The commercial licensing fee for an entity the size of the Establishment to exhibit the Program was $1,250. Neither Peterson nor the Establishment paid a commercial licensing fee to Joe Hand to broadcast the Program, and they were not licensed to broadcast the Program.

**SUMMARY JUDGMENT STANDARD OF REVIEW**

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Servs., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the nonmoving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.,* 655 F.3d 811, 819 (8th Cir 2011). "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id*. at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87)), *cert. denied*, 132 S. Ct. 513 (2011). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis County.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record

3

taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

### I.  47 U.S.C. §§ 553 and 605

Joe Hand asserts that Peterson violated 47 U.S.C. §§ 553 and 605.  Section 553 provides, in pertinent part: "[N]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).  Section 605(a) provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his benefit or for benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

These statutes provide protect against the theft of communications such as the Program. *See DirecTV, Inc. v. Webb,* 545 F.3d 837, 844 (9th Cir. 2008); *California Satellite Systems v. Seimon,* 767 F.2d 1364 (9th Cir. 1985). A majority of courts has held that § 605 applies only to satellite or radio transmissions, not transmission by

cable, and § 553 applies only to cable systems. *See e.g. Charter Commc'ns Entm't I, DST v. Burdulis,* 460 F.3d 168, 173 (1st Cir. 2006); *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996). Courts have not allowed parties to recover under both statutes. *See, e.g., J & J Sports Prods., Inc. v. Blackwell*, No. 07–1058, 2009 WL 2171897, at *2 (M.D. Ala. July 21, 2009); *Garden City Boxing Club, Inc. v. Puebla's Grocery*, No. 06–4735, 2007 WL 4243219, at *3 (E.D.N.Y. Nov. 29, 2007) (citing *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir.1998).

Under both § 553 and § 605, "[a]ny person aggrieved ... may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 553(c)(1); 47 U.S.C. § 605(e)(3)(A). Section 605 defines "any person aggrieved" to include "any person with proprietary rights to the intercepted communication by wire or radio." 47 U.S.C. § 605(d)(6). Although § 553 does not define "aggrieved party," courts have held that a person with proprietary rights in the intercepted communication is a "person aggrieved" under that statute. *J & J Sports Productions, Inc. v. Rezdndiz,* 2008 WL 5211288, *2 (N.D. Ill., Dec. 9, 2008); *PPV Connection, Inc. v. Grau–Alvarez,* 2009 WL 5064476, *4 (D. Puerto Rico Dec. 16, 2009).

To establish liability under either § 553 or § 605, a plaintiff must prove that a defendant unlawfully exhibited, published or divulged a privileged communication and the signal transmitting that communication was delivered to the intercepting party by way of a satellite or cable transmission. It is not necessary for a plaintiff to establish a defendant's "willfulness." 47 U.S.C. § 605(e)(3)(C)(iii); 47 U.S.C. § 553(c)(3)(C). An exception to this provision applies to the interception of cable programming "for private

5

viewing" so long as the "individual [ ] receiving such programming has obtained authorization for private viewing" under an established marketing system. 47 U.S.C. § 605(b)(2)(B). The statute defines "private viewing" as the "viewing for private use in an individual's dwelling unit by means of equipment, owned or operated by such individual." 47 U.S.C. § 605(d)(4).

The undisputed evidence before the Court demonstrates that Joe Hand had exclusive rights to the Program, and that the Program was exhibited at the Establishment on or about July 11, 2009. Peterson admits that a customer asked to see a fight at the Establishment on the date in question, and Peterson accommodated that request. (*See* Filing No. 30 at ¶¶ 4-9.) Accordingly, the Court concludes that Joe Hand has established that the Program was unlawfully displayed. To succeed on the motion for summary judgment, however, Joe Hand also must demonstrate that Peterson is personally liable, and that the Program was displayed through cable transmission or satellite transmission.

### *Peterson's Personal Liability*

Joe Hand has sued Peterson in his individual capacity. Joe Hand argues, and several courts have concluded, that § 553 and § 605 are strict liability statutes. *See e.g. See J & J Sports Productions, Inc. v. Vega,* No. CIV–10–635–M, 2011 WL 776172, at * 1–2 (W.D. Okla. March 1, 2011); *Joe Hand Promotions, Inc. v. Easterling,* No. 4:08 CV 1259, 2009 WL 1767579, at * 4–5 (N.D.Ohio. June 22, 2009); *Joe Hand Promotions v. Jorgenson,* No. 12–C–0159, 2013 WL 64629, at 2–4 (E.D.Wis. Jan.4, 2013); *J & J Sports Prod., Inc. v. Aguilar,* No. CIV–12–467–C, 2013 WL 425034, * 1–2 (W.D.Okla.

Feb.1, 2013); and *Joe Hand Promotions, Inc. v. Adame,* 2012 WL 3561367, at * 3–4 (W.D.Tex. Aug.16, 2012).

Peterson asserts that even if § 553 and § 605 are strict liability statutes, he cannot be held individually liable. Peterson previously made a similar argument to the Court in his own Motion for Summary Judgment (Filing No. 16). In the Court's Memorandum and Order of November 26, 2012, the Court noted that Peterson was the sole owner and shareholder of Double Dare, as well as the individual identified on Double Dare's liquor license for the Establishment, and it appeared Peterson "had the power to commit or prevent the alleged violations, and was in a position to benefit from the violations." (*Id.* at 5.)

Peterson has not presented evidence to alter the Court's previous conclusion. In *Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 947 (8th Cir. 2007), the court found an individual to be liable for a similar violation where the individual was a company's only corporate officer and its sole owner, because the evidence showed no distinction between the actions of the individual and the defendant corporation. *Id.* In this case, the evidence demonstrates that Peterson was the sole director as well as the President, Secretary, Treasurer and registered agent of Double Dare, Inc. (Filing No. 11-1.) Double Dare's Articles of Incorporation indicate that 100 shares of common stock were issued, held by Peterson alone. (Filing No. 28-2 at 51.) The Court concludes, as it did before, that Peterson had the power to commit or prevent the alleged violations, and was in a position to benefit from the violations. Accordingly, Peterson may be held personally liable for violations of § 553 or § 605.

### *Sections 553 and 605 Are Mutually Exclusive*

Although Joe Hand has demonstrated that the Program was unlawfully exhibited at the Establishment, and that Peterson may be held personally liable, there is a question of fact as to whether Peterson is liable under § 553 or § 605. As noted above, § 605 applies only to satellite or radio transmittal, and not to transmittal by cable, and § 553 applies only to cable systems. *See Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 805 (N.D. Ill. 2011) (citing *Norris,* 88 F.3d at 469). Consequently, a defendant cannot be liable under both statutes for the same act. *Id.*; *see also J & J Sports Prods. v. 291 Bar & Lounge*, 648 F.Supp.2d 469, 472 (E.D.N.Y. Aug. 19, 2009).; *Kingvision Pay–Per View, Ltd. v. Autar*, 426 F.Supp.2d 59, 62 (E.D.N.Y.2006). For this reason, courts have refused to grant summary judgment to plaintiffs similarly situated to Joe Hand, where a party sought summary judgment on claims presented under both 605 and 553, but failed to articulate the specifics of the claim and select one section under which to proceed. *See, Garden City Boxing Club, Inc. v. Stone*, 285 F. Supp. 2d 447, 453 (D. Del. 2003); *Joe Hand Promotions, Inc. v. Smith*, 2;09-CV-01047 JSW, 2010 WL 2292315 (D. Ariz. June 7, 2010).

Joe Hand recognizes that it may not recover under both statutes, but seeks damages under § 605, arguing "there is evidence of receiving the Program from a satellite provider." (Pl. Br., Filing No. 28-1 at 6.) Joe hand cites the Affidavit of Dennis Grace, Filing No. 28-2 at ECF 29-32. However, a review of the Affidavit demonstrates only that Mr. Grace observed the Program displayed at the Establishment. There is no indication whether the Program was received via cable or satellite. In contrast, Peterson stated that a customer arranged to display the Program through use of the customer's

own cable box. (Peterson Aff., Filing No. 30 ¶ 4.) The amount of any award of damages is directly related to which statute applies, and thus tied to the manner of interception. Joe Hand seeks statutory damages in an amount up to $110,000 as to each defendant for willful violation of 47 U.S.C. § 605(a), or up to $60,000 as to each defendant for willful violation of 47 U.S.C. § 553, as well as an award of full costs, including attorneys' fees. A genuine issue of material fact exists as to whether Peterson unlawfully intercepted Joe Hand's Program via a cable system or via a satellite transmission. Because this issue of fact remains, it is unclear which statute applies. Accordingly, summary judgment is precluded.

## II.   Conversion

Joe Hand argues that Peterson is also liable for conversion. "Tortious conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights." *Baye v. Airlite Plastics Co.,* 618 N.W.2d 145, 152 (Neb. 2000) (citing *Zimmerman v. FirsTier Bank,* 585 N.W.2d 445 (Neb.1998)).  "[T]he essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property." *Zimmerman,* 585 N.W.2d at 452 (quoting *Terra Western Corp. v. Berry and Co.,* 295 N.W.2d 693, 696 (Neb.1980)). The Court and the parties have not identified any controlling precedent in Nebraska on the question of whether the rights at issue here would fall within the definition of "property" capable of conversion. Courts from other jurisdictions have held that rights similar to those claimed by Joe Hand *are* susceptible to conversion.[1]

---

[1] *See, e.g., Joe Hand Promotions, Inc. v. Jacobson*, 874 F. Supp. 2d 1010, 1020 (D. Or. 2012) (stating that cable signals are capable of measurement and perceptible to the senses, and are thus like

9

The Court concludes that it need not determine whether Nebraska law contemplates a conversion action for intangible property. As discussed above, the Court has held that Peterson may be liable for displaying the Program illegally in violation of either 47 U.S.C. §§ 553 or 605, but an issue of fact remains as to whether Peterson is liable under § 553 for cable transmissions, or § 605 for satellite transmissions. If Joe Hand recovers under one of those theories, its state law conversion claim is not viable. *Joe Hand Promotions, Inc. v. Abrell*, 1:10-CV-00450-TWP, 2012 WL 2458636, at *2 (S.D. Ind. June 27, 2012); *Joe Hand Promotions, Inc. v. Hurley,* 2011 WL 6727989, at *2 (S.D.Ill.Dec.21, 2011) (plaintiff cannot assert a state law claim for conversion in addition to stating claims under § 553 and § 605 damages) (citing *Joe Hand Promotions, Inc. v. Lynch,* 2011 WL 5386358, at *3–5 (N.D. Ill. Nov.7, 2011)); *Time Warner Cable of New York City v. Googies Luncheonette, Inc.,* 77 F.Supp.2d 485, 491 (S.D.N.Y.1999) (denying plaintiff relief for claims under New York law, as granting separate relief under these laws would "violate the general principle that precludes double recovery"). Accordingly, the Court will not grant summary judgment on Joe Hand's conversion claim.

---

tangible property); *J & J Sports Productions, Inc. v. Gamino,* slip op., 2012 WL 913743, at *4 (E.D.Cal. Mar. 16, 2012) ("exclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion.") (citing *Don King Prods./Kingvision v. Lovato,* 911 F.Supp. 419, 423 (N.D.Cal.1995); *DIRECTV, Inc. v. Pahnke,* 405 F.Supp.2d 1182, 1189 (E.D.Cal.2005)); *DirecTV, Inc. v. Cantu,* 2004 WL 2623932, at *2 (W.D.Tex. Sept. 29, 2004) (noting other courts have "found that broadcast signals are valuable property in and of themselves and that plaintiffs may obtain damages for wrongful interception of these signals without resort to the Copyright Act") (citing cases from the Eastern District of New York; and the Eighth Circuit Court of Appeals, applying South Dakota law); *DIRECTV, Inc. v. McCool,* 339 F.Supp.2d 1025, 1038 (M.D.Tenn.2004) (holding DirecTV's encrypted satellite signals "are comparable to the confidential telephone authorization codes used by MCI," and are capable of conversion).

## CONCLUSION

For the reasons discussed above, Joe Hand's Motion for Summary Judgment will be denied. Although the evidence demonstrates that Peterson is liable for unauthorized display of the Program, an issue of fact remains as to whether such liability falls under 47 U.S.C. § 553 for cable transmissions, or 47 U.S.C. § 605 for satellite transmissions. If Joe Hand recovers under either statute, it cannot sustain an independent state law claim for conversion. Because an issue of fact remains as to liability, the Court will not consider damages at this time. Accordingly,

IT IS ORDERED: The Motion for Summary Judgment (Filing No. 28), filed by Plaintiff Joe Hand Promotions, Inc., is denied.

Dated this 3rd day of March, 2014.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge